**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 24-1641

UNITED STATES OF AMERICA

v.

WILLIAM MANDERVILLE,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:23-cr-00901-001)
District Judge: Honorable Michael A. Shipp

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 28, 2026

Before: HARDIMAN, AMBRO, and SMITH, *Circuit Judges*

(Filed: August 13, 2026)

OPINION*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

William Manderville appeals his conviction and sentence for conspiring to distribute and distributing methamphetamine and heroin. We will affirm.

I[1]

Manderville pleaded guilty to conspiring to distribute 50 grams or more of methamphetamine and 100 grams or more of heroin in violation of 21 U.S.C. § 846 and to distributing 50 grams or more of methamphetamine and 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Because the parties agreed that a sentence between 60 to 84 months' imprisonment would be reasonable, they promised not to appeal a sentence within that range. But after determining that Manderville's Guidelines range was 151 to 188 months' imprisonment, the District Court imposed a sentence of 108 months' imprisonment. Manderville timely appealed.[2]

---

[1] We include only those facts necessary to decide this appeal. For a more fulsome description, *see United States v. Manderville*, 2025 WL 1604505 (3d Cir. June 6, 2025) (determining that original counsel's brief filed under *Anders v. California*, 386 U.S. 738 (1967), was inadequate, discharging counsel, and directing the appointment of new counsel).

[2] Like his first lawyer, Manderville's current counsel filed an *Anders* brief and *Anders* motion to withdraw. Current counsel identified, but did not argue, issues of arguable merit. Based on our consideration of those filings, we "believe[d] there [might] be issues of arguable merit" and ordered briefing from the parties to address the merits of "whether the Government at sentencing breached the plea agreement, whether the defendant entered a knowing and voluntary guilty plea, and any additional issues counsel determine[d] to be of arguable merit on further review, including on consideration of Appellant's informal brief." ECF No. 64. *See Anders*, 386 U.S. at 743; 3d Cir. L.A.R. 109.2(a) (2011).

We therefore denied current counsel's *Anders* motion to withdraw and this appeal has moved beyond the *Anders* construct. We will address the matters argued in the supplemental briefing filed by Manderville's current counsel and exercise our discretion

II[3]

Manderville argues, for the first time on appeal, that the Government's advocacy at sentencing violated the terms of the plea agreement. We are not convinced the Government violated the plea agreement, but even if it did, the District Court's error in failing to so find would not have been clear or obvious. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1993).

In determining if there was a breach of a plea agreement, explicit or implicit, we consider "the parties' reasonable understanding of the agreement," and whether the challenged conduct was consistent with it. *United States v. Williams*, 510 F.3d 416, 425 (3d Cir. 2007) (quoting *United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005)).

Relying on our decisions in *United States v. Davis*, 105 F. 4th 541 (3d Cir. 2024), and *United States v. Nolan-Cooper*, 155 F.3d 221 (3d Cir. 1998), Manderville argues that the Government breached the agreement because, when advocating for a sentence:

- it "poison[ed] the well," Reply Br. 4, by not starting with mitigating factors but instead observing at the outset that trafficking in drugs is a scourge on New Jersey and trafficking in drugs imposes immense suffering on its victims, including the same type of drugs involved in this case, and by following with statements "focus[ing] the court's attention on Manderville's criminal history" and that his previous sentences did not deter his criminal conduct, Manderville Br. 9; and

---

to address the challenge raised in Manderville's pro se brief—filed on permission after counsel filed the *Anders* brief—that his guilty plea was not knowing and voluntary. We will not address Manderville's various arguments about his trial counsel's performance, however, because we leave such issues for collateral review. *See United States v. Thornton*, 327 F.3d 268, 271–72 (3d Cir. 2003).

[3] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

- it ended with a "pitch" for a significant sentence at the top of the range without specifying whether it meant the parties' stipulated range or the Guidelines range, Reply Br. 4.

Manderville notes that the Court imposed a sentence above the stipulated range and mentioned that the Government emphasized: (1) the nature of the drug trafficking crimes, its impact on New Jersey, and the harm caused to victims; and (2) Manderville's criminal history and lack of successful deterrence. Manderville also takes issue with the Government's use of the term "significant" when suggesting a sentence to the Court. Manderville Br. 12.

First, in considering the record, Manderville's argument that the Government failed to specify in its closing pitch to which range it was referring goes nowhere. At the outset, the Government specified it was "requesting a downward variance to the top of the stipulated range that the parties have agreed to in the plea agreement." App. 58. And, the Court said it understood the parties were seeking a sentence in the range of 5 years' and 7 years' imprisonment.

Second, in *Davis* and *Nolan-Cooper*, the prosecution over-emphasized the defendant's reprehensible conduct and either neglected mitigating factors in support of the lower sentence or actively argued against them. And unlike in *Nolan-Cooper*, here the plea agreement permitted the Government to provide "the *full* nature and extent of Manderville's activities and relevant conduct." App. 22 (emphasis added). So it would not have been "obvious" or "clear," *Olano*, 507 U.S. at 734, to the Court that the Government breached the agreement by discussing the harm caused by drug trafficking and Manderville's recidivism. And contrary to Manderville's contention that the

4

Government transgressed reasonable expectations under the agreement when it used the term "significant" to advocate for a sentence at the top of the stipulated range— imprisonment for 7 years as opposed to 5, it did so in the context of also emphasizing important factors favorable to Manderville to support the high end of the parties' stipulated range. Indeed, Manderville's own counsel referred to the 5 years' imprisonment at the bottom of the stipulated range as a "very significant" one. App. 64. So the Government's reference to 7 years as significant, was not inconsistent with the stipulated range.

Finally, in *Davis* we remarked that if "the prosecutor had pivoted" after presenting the reprehensible conduct and the victim impact "and argued that despite the aggravating factors, other considerations merited a low-end Guidelines sentence, that might have sufficed to cure the breach." 105 F.4th at 553. Here, the Government made such a pivot— it emphasized Manderville's "excellent behavior on pretrial release," App. 59, explained that Manderville now posed a lower risk of recidivism, and advocated for a sentence substantially below the Guidelines range. In granting a significant downward variance, the District Court acknowledged these mitigating factors urged by the Government.

The District Court: (1) acknowledged the Government's argument at sentencing "that the need for specific deterrence and concerns for recidivism [in Manderville's case] warrant a downward variance," App. 73; (2) agreed with both parties that a downward "variance [was] appropriate here," App. 74; (3) recognized the province of the prosecution and Manderville in assenting to their plea agreement, and emphasized—as the plea agreement also made clear—that "sentencing belongs to [the] Court." App. 75.

5

Although the Court did not sentence Manderville as he preferred, it still considered the agreement and the mitigating factors (as emphasized by the Government) to sentence him to over 42 months below his Guidelines range.

In sum, even assuming there was an error, Manderville's challenge that the Government breached the plea agreement fails at Step Two of *Olano*. *See Olano*, 507 U.S. at 734.

### III

We next briefly address Manderville's pro se challenge to his conviction. Because Manderville failed to raise in the District Court any of the arguments he raises before us now, our review is again only for plain error. *See United States v. Agarwal*, 24 F.4th 886, 891 (3d Cir. 2022).

As stated in his pro se brief, Manderville contends that his plea was not knowing and voluntary because, as he understood it and his counsel told him, once he pleaded guilty, he had a "deal [for] no less than 5 years [and] no more than 7 years." ECF No. 63 at 1. He explains that he would have "had [the] option to go another route" if he were not guaranteed a sentence within that range but his counsel only told him after the Court imposed the 108 months' sentence that the Court could do that, contrary to his understanding. *Id.*

Before the Court accepted Manderville's change of plea, it confirmed that no promises were made in exchange for his guilty plea other than those in the plea agreement. In the agreement, the parties acknowledged: the actual sentence imposed was "within the sole discretion of the sentencing judge," App. 20; the parties' agreement

6

"cannot and does not bind the sentencing judge," App. 22–23; and the parties' "[s]tipulated [r]ange will not bind the [sentencing] [c]ourt," App. 26. Manderville signed that agreement and acknowledged that he understood that the District Court was not bound by the stipulations.

Manderville has not shown a reasonable probability that, but for a plain error by the District Court, he would not have pleaded guilty and as such that our confidence in his conviction is undermined. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

\*　　\*　　\*

For the stated reasons, we will affirm the judgment.